UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Larry P.[1] , | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CASE NO. 3:20-CV-807-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Larry P. ("Mr. P.") seeks judicial review of the Social Security Commissioner's decision denying Mr. P.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"). This Court may enter a ruling in this matter based on the parties' consent pursuant to 28 U.S.C. § 636(c)(1) and 42 U.S.C. § 405(g). [*See* DE 12]. For the reasons discussed below, the Court **REMANDS** the Commissioner's decision.

**I.   OVERVIEW OF THE CASE**

Mr. P. filed an application for DIB and SSI on May 30, 2017, alleging a disability onset date of November 1, 2016, which he later amended to April 17, 2017.  Mr. P.'s application was denied initially on August 21, 2017, and upon reconsideration on November 30, 2017. Following a hearing on March 22, 2019, an Administrative Law

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

Judge ("ALJ") issued a decision on August 23, 2019, which affirmed the Social Security Administration's denial of benefits. The ALJ's decision became the final decision of the Commissioner when the Appeals Counsel declined review on July 22, 2020. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Mr. P. timely sought judicial review of the Commissioner's decision on September 24, 2020. Mr. P. filed his opening brief on June 22, 2021, and the Commissioner filed her Memorandum in Support of Decision on July 30, 2021. This matter became ripe on August 13, 2021, when Mr. P. filed his reply.

## II.   APPLICABLE STANDARDS

### A.   Disability Standard

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity ["SGA"] by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB and SSI under the Act includes determinations as to: (1) whether the claimant is engaged in SGA; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past

relevant work based upon his RFC; and, if not, (5) whether the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520; 416.920[2]. The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

B.      **Standard of Review**

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2007).

The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in

---

[2] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biesek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of disability, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir.2004)).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). Conversely, "[a]n award of benefits is appropriate only where all factual

issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

### III. ANALYSIS

#### A. The ALJ's Decision

Mr. P.'s hearing before an ALJ on his applications for DIB and SSI took place on March 22, 2019. On August 23, 2019, the ALJ issued her written decision finding that Mr. P. was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. §404.1520.

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Mr. P. had not engaged in substantial gainful activity.

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. Here, the ALJ found that Mr. P. suffers from the severe impairments of hallux rigidus deformity of the right foot status post-surgery, arthrodesis with internal fixation, and complex regional pain syndrome ("CRPS"). Conversely, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.,* 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). Here,

the ALJ found that that Mr. P. had the following non-severe medically determinable impairments: lumbar radiculopathy and tarsal tunnel syndrome of the left lower limb.

At Step Three, the ALJ found that none of Mr. P.'s severe impairments, nor any combination of his impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In making this finding, the ALJ considered listings 1.00 and 1.02. Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Mr. P. can perform his past relevant work based upon his residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that the individual can do despite his limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. Here, the ALJ found that Mr. P. has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> except where the claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant is limited to frequently operating foot controls with the right lower extremity. The claimant is limited to no more than occasional exposure to wetness, vibration, and hazards such as moving mechanical parts and unprotected heights.

[DE 15 at 22]. Based on this RFC, at Step Four, the ALJ found that Mr. P. was unable to perform past relevant work as a tank cleaner, auto parts delivery driver, newspaper delivery person, or truck driver. Accordingly, the ALJ moved on to last step in the five-step sequential analysis.

At Step Five, while the burden of proof shifts to the Commissioner, the Commissioner need only show that the claimant can perform some type of substantial gainful work existing in the national economy in substantial numbers. 42 U.S.C. § 423(d)(2)(A). ALJs typically enlist a vocational expert ("VE") to testify regarding which occupations, if any, a claimant can perform. *See* S.S.R. 83-12. VEs use information from the Dictionary of Occupational Titles ("DOT") to inform their assessments of a claimant's ability to perform certain types of work. S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Here, the VE, using the DOT, identified three separate jobs that Mr. P. could still perform—cashier II, storage facility rental work, and night cleaner—which, respectively, have 859,600 jobs nationally, 44,700 jobs nationally, and 129,000 jobs nationally.

Finding that Mr. P. could make an adjustment to other work that existed in substantial numbers, the ALJ determined that Mr. P. was not under a disability, as defined in the Act, from his alleged onset date through the date of ALJ's decision on August 23, 2019. [DE 15 at 28].

B. **Issues for Review**

In his opening brief, Mr. P. makes two overall assertions: (1) that the ALJ erred in evaluating his RFC; and (2) that the ALJ erred in finding that Mr. P. could perform other work at Step Five.

As to his RFC, Mr. P. contends that the ALJ erred in several ways— that the ALJ did not consider all of Mr. P's medically determinable severe and nonsevere impairments and limitations when formulating the RFC; that the ALJ did not enunciate or apply the correct evidentiary standard; that the ALJ failed to properly weigh opinion evidence; and that the ALJ improperly assessed Mr. P.'s veracity rather than his functioning in formulating his RFC. Specifically, as to this first assertion of error—the ALJ's consideration of Mr. P.'s impairments and limitations in the RFC—Mr. P. first contends that the ALJ erred in evaluating Mr. P.'s subjective symptoms and limitations, as the decision fails to address the severity of his pain and symptoms and accordingly, fails to articulate which of Mr. P.'s claimed limitations were inconsistent with the record or how the evidence contradicted any specific statement or allegation made by Mr. P. Likewise, Mr. P. argues that this analysis is based on "cherry-picked" evidence, with the ALJ's decision ignoring evidence in the record that undermined her conclusion. Scrogham v. Colvin, 765 F.3d 685, 698 (7th Cir. 2014). Mr. P. also contends that the ALJ's analysis fails to adequately account for his CRPS considering the guidance found in Social Security Ruling 03-2p. *See Titles II & XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/complex Reg'l Pain Syndrome*, SSR 03-2P (S.S.A. Oct. 20, 2003), *available at* 2003 WL 22814447.

Finding that the ALJ's RFC analysis failed to adequately evaluate limitations from all of Mr. P.'s impairments and that the ALJ failed to address evidence contrary to her conclusions, especially considering Mr. P.'s medically determinable severe impairment of CRPS, remand is appropriate.

**C.     Discussion**

Mr. P. alleges that the ALJ erred in evaluating his subjective symptoms when determining his RFC. When considering a claimant's symptoms as part of the RFC analysis, an ALJ must follow a two-step sequential process. First, the ALJ must determine whether there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms. Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *See* 20 C.F.R. § 416.929(a). The ALJ evaluates the intensity, persistence, and limiting effects of symptoms by considering subjective statements regarding symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* 20 C.F.R. § 404.1529(a). Relevant factors include:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;

>    (6) Other measures taken to relieve pain or other symptoms;
>    (7) Other factors concerning functional limitations due to pain or other symptoms

See *id.* § 404.1529(c)(3). This analysis must focus on "the extent to which the symptoms reduce the individual's capacity to perform work-related activities." *Wade v. Berryhill*, No. 2:17-CV-278, 2018 WL 4793133, at *10 (N.D. Ind. Oct. 4, 2018) (citing SSR 16-3p). Moreover, the ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish their capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(c)(4). So long as the ALJ gives specific reasons supported by the record, the Court will not overturn this type of credibility determination unless it is "patently wrong." *See Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).

Here, the ALJ begins addressing Mr. P.'s subjective symptoms by stating that Mr. P.'s alleged symptoms are "consistent with hallux rigidus deformity of the right foot status post-surgery arthrodesis of the first metatarsophalangeal joint with the internal fixation, and [CRPS]." [DE 15 at 23]. The ALJ then observed that Mr. P. had been a Medicaid recipient since 2017 and that Mr. P. can "help cook and tidy up in the apartment," mentioning that he cooks every other day but takes breaks and sits down while doing so. [*Id.*] The ALJ also noted that Mr. P. can drive two or three times a

month. In terms of Mr. P.'s claims of pain, the ALJ explained that Mr. P. testified that he had pain in his foot aggravated by touch, but further observed that while Mr. P. had been prescribed pain medication after a hernia operation, he had never been prescribed pain medication for his CRPS.

The ALJ then found that Mr. P.'s medically determinable impairments could reasonably be expected to cause his alleged symptoms, with the decision moving into a chronological summary of various medical treatment records submitted by Mr. P. The ALJ then concludes that Mr. P.'s statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record. Specifically, the ALJ observes that while Mr. P. obtained Medicaid in 2017, there was a gap in medical records from October 2017 to May 2018. The ALJ also discounted Mr. P.'s treatment records from May 2018, stating these records did not substantiate Mr. P.'s diagnoses or Mr. P.'s allegations. The ALJ also stated it was "noteworthy" that, despite Mr. P.'s claims of severe pain, Mr. P. testified at the hearing that he only takes Tylenol 3-4 times a week. [DE 15 at 25].

### 1. No "Logical Bridge" and a "Sound-Bite" Approach

Mr. P. first contends that this analysis fails to provide a meaningful description of his symptoms and fails to explain which of his alleged limitations were inconsistent with the record or how the evidence contradicted any statement made by Mr. P. Mr. P. contends that, instead, the decision is merely a summary of certain evidence, recitation of factors, and a conclusion, with no connecting rationale or "logical bridge." [DE 19 at 10]. In response, the Commissioner argues that, "while it is always possible to say

more," the ALJ explained that she found Mr. P.'s reports of disabling pain inconsistent with the fact that he can do some housework[3], that he obtained some relief from treatment, that at several doctor's visits he exhibited a normal gait and ability to stand, that he typically took no prescription pain medication for relief, and that despite being a Medicaid recipient, he did not seek treatment for a significant period. [DE 20 at 11, 10].

Although the Commissioner's response connects evidence mentioned in the decision to the ALJ's conclusion, the ALJ did not present her reasoning in this way. Rather, as contended by Mr. P., the ALJ simply summarized certain evidence and subsequently concluded that Mr. P's alleged symptoms were inconsistent with the record. Moreover, the Commissioner points to facts that were not discussed by the ALJ when she concluded that Mr. P.'s symptoms were inconsistent with the evidence, Specifically, while the Commissioner's response references Mr. P.'s household activities, treatment relief, his normal gait and ability to stand at certain medical visits, the ALJ's decision only specifically discussed his gap in treatment records and his use of Tylenol when concluding that Mr. P.'s subjective symptoms were not consistent with the evidence. The Court may only review the analysis presented by the ALJ and cannot base its review on the Commissioner's explanation of the decision. *See, e.g.*, *Phillips v.*

---

[3] To the extent that the ALJ's decision suggests that Mr. P's reports of disabling pain were inconsistent with his reports of his ability to do light housework or drive twice a month, this does not mean that Mr. P is also able to work full-time. See *Pinkowski v. Saul,* No. 2:19-CV-186-JEM, 2020 WL 3888176, at *4 (N.D. Ind. July 10, 2020) (noting that the plaintiff's ability to take care of personal hygiene or household chores is not suggestive of the ability to work); *see also Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("[A] person's ability to perform daily activities, especially if that can be done only with significant limitations, does not translate to an ability to work full-time."); *see also Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home.")

*Astrue*, 413 F. App'x 878, 883-84 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence."); *see also Villano v. Astrue*, No. 2:07 CV 187, 2009 WL 1803131, at *3 (N.D. Ind. June 23, 2009) (Commissioner's position limited to the ALJ's written decision, especially with respect to the required bridge between facts and conclusions, thus prohibiting post-hoc rationalization); *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (finding that the Commissioner's arguments failed because the Commissioner advanced grounds in support of the decision that were not given by ALJ and relied upon facts not discussed by the ALJ).

To the extent that the ALJ found Mr. P.'s reports of pain inconsistent with his gaps in medical treatment, the decision also contains no evidence that the ALJ considered possible explanations for the gap. "Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for lack of medical care before drawing a negative inference." *Dory L. v. Saul*, No. 19 CV 50106, 2020 WL 5763612, at *5 (N.D. Ill. Sept. 28, 2020)(quoting *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)). The only evidence that the ALJ mentioned that may explain the gap in treatment was noted in a treatment record from October 2016—a year before the gap at issue—wherein Mr. P. reported that he did not like going to see doctors and did not have a primary care physician. [*See* DE 15 at 23].

Moreover, Mr. P. contends that the ALJ's consideration of his use of Tylenol for pain relief constituted a "sound-bite approach" that failed to address other evidence that contradicted her conclusion. *See Scrogham*, 765 F.3d at 698. Specifically, the ALJ found it "noteworthy" that Mr. P. was only using Tylenol on an occasional basis—three or four times a week—despite reporting disabling pain. However, Mr. P. contends that the ALJ fails to explain or even reference other evidence regarding Mr. P.'s pain medications and treatments, nor does the ALJ explain why she chose to reject such evidence. For example, Mr. P. contends that the ALJ failed to mention that Mr. P. had been prescribed pain medication in the past. [DE 19 at 12, citing to DE 15 at 342, 355, 373]. The ALJ fails to mention that Mr. P. also testified that Tylenol was ineffective at relieving his pain[4]. [DE 15 at 61]. While the ALJ did observe that Mr. P. had received a Lumbar Sympathetic Block ("LSB") to assist in pain relief when summarizing various medical treatment records, the ALJ does not otherwise address this treatment when concluding that the evidence was not consistent with Mr. P.'s subjective symptoms.

An ALJ need not mention every piece of evidence in the record but must connect the evidence to the conclusion. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Here, as the ALJ failed to connect the evidence chronicled in the decision to her conclusion, the Court cannot trace the path of the ALJ's reasoning to be assured that the ALJ considered all the important evidence in reaching her determination that Mr. P.'s allegations were not consistent with the record. *Scott*, 297 F.3d at 595. Moreover,

---

[4] In his opening brief, Mr. P. also contends that there is no pain medication specifically approved for CRPS in the U.S.

because the ALJ found it was "noteworthy" that Mr. P only took Tylenol despite his reports of disabling pain, the ALJ was required to confront other evidence regarding Mr. P.'s pain medications and symptoms and explain why it was rejected. *Moore*, 743 F.3d at 1122-23.

### 2.    Mr. P.'s CRPS

The ALJ's decision also does not adequately discuss Mr. P.'s CRPS. First, it is unclear whether, or to what extent, the ALJ considered Mr. P.'s CRPS in her conclusion that Mr. P.'s alleged symptoms were not consistent with the evidence. Specifically, even though the ALJ provided a chronological summary of the treatment records, which included observations that Mr. P. was assessed for CRPS in April 2017, May 2017, September 2017, and May 2018, the portion of the ALJ's analysis concluding that Mr. P.'s alleged symptoms were inconsistent with the medical evidence only directly mentions Mr. P.'s hallux rigidus of the right foot. [DE 15 at 25].  This also implies, as alleged by Mr. P., that the ALJ failed to address Mr. P.'s CRPS in accordance with Social Security Ruling 03-2p, which provides further guidance for evaluating CRPS symptoms. *See Stacey W. v. Kijakazi*, No. 1:20-CV-01949-SEB-MG, 2021 WL 4177085, at *5 (S.D. Ind. Aug. 13, 2021), *report and recommendation adopted sub nom. Wallace v. Kijakazi*, No. 1:20-CV-01949-SEB-MG, 2021 WL 4171501 (S.D. Ind. Sept. 14, 2021).

Social Security Ruling 03-2p describes CRPS as "a constellation of symptoms and signs that may occur following an injury to bone or soft tissue." 2003 WL 22814447, at *1.  SSR 03-2p further explains that even minor injuries can trigger CRPS and that it may cause a degree of pain that is "out of proportion to the severity of the precipitating

injury." *Id.* at *2. Accordingly, individuals with CRPS may not have objective clinic findings that typically are expected to produce the pain reported by that individual. *Id.* at *5. Moreover, CRPS symptoms "may be present at one examination and not appear at another" and "conflicting evidence is common." *Id.* at *4; *see also Mark L. v. Saul*, No. 3:18-CV-338 JD, 2019 WL 2560099, at *3 (N.D. Ind. June 21, 2019) (explaining that CRPS symptoms are "often transitory"). For these reasons, "it is crucial that the [ALJ] evaluate credibility with great care and a proper understanding of the disease[ ]." *Johnson v. Colvin*, 2014 WL 2765701, at *1 (E.D. Wis. June 18, 2014). In this vein, SSR 03-2p also provides that "third-party information, including evidence from medical practitioners who have provided services to the individual, and who may or may not be 'acceptable medical sources,' is often critical in deciding the individual's credibility" in these cases. 2003 WL 22814447, at *7. This is because "[i]nformation other than an individual's allegations and reports from the individual's treating sources helps to assess an individual's ability to function on a day-to-day basis and helps to depict the individual's capacities over a period of time, thus serving to establish a longitudinal picture of the individual's status." *Id.*

      While failure to directly reference SSR 03-2p is not reversible error, it is error to discount a claimant's subjective symptoms for reasons that the ruling specifically addresses. *See Mark L.*, 2019 WL 2560099, at *3 ("[W]hile ALJs often point to evidence of inconsistencies in the record as an indication a condition is not as severe as a claimant says, that same reasoning might not apply when a claimant has [CRPS], as to which such contradictions are common"). Here, as the ALJ's analysis does not adequately

reference Mr. P.'s CRPS and fails to cite to SSR 03-2p, it is not clear if the ALJ was even aware of the guidance and policies found in the ruling. Moreover, the ALJ's analysis cites to inconsistencies that are addressed by the ruling. For instance, the ALJ found that Mr. P.'s May 2018 medical records—which show that Mr. P. was assessed and treated for CRPS—did not consist of "physical examinations or any other clinical evidence to substantiate his diagnoses" and that records from his primary care doctor during that time "did not support the claimant's allegations." [DE 15 at 25] Yet SSR 03-2p specifically provides that individuals with CRPS may not have objective clinic findings that typically are expected to produce the pain reported by that individual. *See, e.g., John B. v. Kijakazi*, No. 3:21CV485, 2022 WL 669900, at *5 (N.D. Ind. Mar. 7, 2022) ("When subjective reports of disproportionate pain are characteristic of the condition [CRPS], it would be wholly inappropriate to dismiss pain because of a perceived lack of clinical findings when the condition has been found to exist in an individual . . .")

Even arguments made by the Commissioner on review point to inconsistencies in the medical evidence that are addressed by the ruling. For instance, the Commissioner argues that Mr. P.'s reports of pain were inconsistent with the evidence that he displayed a normal gait and the ability to stand at several doctor visits. However, SSR 03-2p specifically notes that CRPS symptoms are transitory, and may be present at one medical visit and not at others. *See, e.g., Mark L.*, 2019 WL 2560099, at *3 (finding error when the ALJ "discounted Mr. L.'s claims in part because of what he interpreted as inconsistent medical evidence[,] as the ALJ's decision had noted "the instability of the medical evidence" and "not all physical findings after 2015 are

similar…. Findings such as these broadcast an opposite picture from the claimant's allegations and even previously seen difficulties.")

Other courts in this circuit have remanded when an ALJ's decision fails to adequately address a claimant's CRPS and discounts a claimant's subjective symptoms for reasons that the ruling specifically addresses. *See, e.g.*, *John B.*, 2022 WL 669900, at *5; *see also Stacey W.*, 2021 WL 4177085, at *5-6 (finding that failure to evaluate claimant's CRPS through "prism of SSR 03-02p . . . was patently wrong"); *Beebe v. Saul,* No. 18-CV-794-BBC, 2019 WL 5616952, at *7 (W.D. Wis. Oct. 31, 2019) (finding err when an ALJ's concerns regarding inconsistencies in the plaintiff's reports are the type of inconsistencies addressed by the guidance SSR 03-2p); *see also Mark L.*, 2019 WL 2560099, at *1 (remanding after ALJ failed to acknowledge or account for SSR 03-2p); *Paschal v. Berryhill*, No. 17 CV 5627, 2018 WL 4095100, at *4 (N.D. Ill. Aug. 28, 2018) (noting that multiple district courts have held that when a plaintiff has been diagnosed with CPRS by two or more physicians, a medically determinable impairment has been established and an ALJ's failure to address the diagnosis during the sequential evaluation process is reversible error).

Defendant contends that the outcome would be no different if the ALJ had mentioned SSR 03-2p, as Mr. P. has not shown that he requires more limitations than what was included in his RFC. [DE 20 at 6, 10]. "An error in a Social Security determination is harmless when, considering the evidence in the record, a court can predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

However, SSR 03-2p indicates that "[c]hronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior...." 2003 WL 22814447, at *5. Here, the ALJ failed to discuss whether mental limitations should be incorporated in the RFC to account for the effects of pain reported. *See Mark L.*, 2019 WL 2560099, at *4. Based on the lack of analysis from the ALJ as to Mr. P.'s CRPS, the Court cannot predict, with great confidence, that the result would be the same on remand. This does not mean that, on remand, the ALJ must accept Mr. P's claims, but the ALJ must evaluate the claims consistent with the Ruling. *See id.*

Accordingly, given that the ALJ's subjective symptom analysis does not reflect awareness of SSR 03-2p and discounts Mr. P.'s symptoms for reasons that are inconsistent with the ruling, the decision fails to show that the ALJ evaluated Mr. P.'s symptoms "with great care and proper understanding of the disease[]" and accordingly, this Court must find that the ALJ's subjective symptom analysis was "patently wrong." *Stacey W.*, 2021 WL 4177085, at *5-6; *Johnson*, 2014 WL 2765701, at *1.

Finally, Mr. P. has raised other arguments regarding the ALJ's assessment of his RFC and the ALJ's analysis at Step Five. Mr. P. is free to raise these issues on remand.

### IV.  CONCLUSION

For the reasons stated above, this Court concludes that the ALJ's RFC analysis was not supported by substantial evidence because it failed to build a logical bridge between the evidence and the ALJ's conclusion and failed to address evidence that contradicted the ALJ's conclusion. Similarly, the ALJ's failure to address Mr. P.'s CRPS

in the RFC analysis left a gap between the evidence and the RFC, especially considering the guidance in SSR 03-2p. Accordingly, the Court now **REMANDS** this action to the SSA for further administrative proceedings consistent with this opinion.

**SO ORDERED** this 7th day of September 2022.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
